Our second case is 22-4576, U.S. v. Blackmon. Council, whenever you're ready. May it please the court, Tiffany McGregor on behalf of Mr. Blackmon. This appeal presents a single issue, whether the government has proven beyond a reasonable doubt that the Erlinger error in this case was harmless. It has not. Because the government failed to carry its burden, this court should remand for resentencing without the Armcord criminal enhancement. Can I ask you about that? Why isn't that flat out inconsistent with Brown? I don't understand. Let's assume for the sake of argument you win, both as a matter of first principles, but also as literally a matter of what this court said in Brown. The remedy is to vacate his guilty plea, not to give him the benefit of a sentence free of the ACA enhancement, right? We said this quite clearly in Brown. Brown was also a guilty plea case. And we said if the defendant wins, the remedy is to vacate the guilty plea, not to just resentence him. Well, Your Honor, I believe that in this case, that Mr. I'm sorry. So one way to think about this, you agree with me that this indictment actually charged the ACA enhancement, right? It did, Your Honor. This indictment actually said his prior offenses occurred on occasions different from each other. That was in the indictment. I agree with that, Your Honor. And you agree that your client pleaded guilty to that indictment. He did plead guilty. So at this point, absent some defect in his plea colloquy, he has pleaded guilty to an indictment that charges the ACA enhancement. So I don't understand how any error other than maybe a Rule 11 plea. Now, let's posit that given Erlinger, the district court said something to him at the plea colloquy that was totally wrong. Correct. But that's a Rule 11 plea colloquy error. It is, Your Honor. So why isn't the remedy to vacate the plea, not to give him the benefit of an offense he wasn't charged with? Your Honor, I believe because he pled guilty to possession of a firearm. No, he pled guilty to an indictment that charged possession with a firearm while being subject to the ACA enhancement. That's the indictment he pleaded guilty to. Your Honor, I do not believe he made that admission during his plea. Right. So again, maybe the district court erred in accepting his guilty plea because the district court accepted a guilty plea in which the defendant did not in fact admit everything in the indictment. But that's a plea error, right? That is a plea error. In other words, if the district court had correctly at the guilty plea stage said, and if you go to trial, you can have a jury trial right on the ACA enhancement. And then he pleaded guilty, we wouldn't be here, right? Correct. So it's a plea. Okay. So again, I don't understand how the remedy in addition to what we said in Brown, I don't understand how the remedy for an error during the plea colloquy is to give the defendant a better sentence based on a crime that was not crime charged in the indictment. Well, Your Honor, that may be the case. It may be that the correct remedy is to vacate back to allowing Mr. Blackman to decide whether he would continue to plead guilty. I mean, isn't that part of the analysis that the defendant would not have pled guilty having been properly advised of the law and what the consequences were? That is the proper analysis. Okay. So why isn't it true in this case that there's no possibility that your client would have taken a different route given the fact that offenses, at least to me, the ACA enhancement offenses appear clear to have occurred on separate occasions and that the risk of being proven wrong were just too significant for your client to take a different route here? Well, Your Honor, it would be our position that the sentencing disparity would have created a powerful incentive for Mr. Brown, I'm sorry, Mr. Blackman to have the government carry its burden to prove his predicates occurred on different occasions. Maybe you can elucidate me as to what arguments you would have made before a jury that would have persuaded the jury that these offenses, these three, were they robbery offenses? A robbery offense, Your Honor, I believe. An assault, a breaking and entering. That these occurred, did not occur on different dates. I mean, what's the argument? Well, Your Honor, I believe it's not Mr. Blackman's burden to prove that he... You're right about that. In fact, we had a big argument about that earlier. So, but on the face of these, you know, the allegations, assuming a rational, reasonable jury, what would be the argument? Just indulge me. What would be the argument as to why the jury would be persuaded that those did not occur on separate occasions? Well, Your Honor, you know, I could proffer any argument, but ultimately, it's the government's burden to prove that had Mr. Blackman been properly advised, that it was their burden to prove this occasion's issue. Okay. But the one thing I know for sure is that that alone isn't enough. And the reason I know that is because in Brown, this court held that in a similar case, the error was harmless and everything you just said would have applied in Brown too. So maybe another way to ask the Chief's question is, this case is different from Brown because... Complete the sentence. This case is different from Brown because... I would say this case is different from Brown because Mr. Blackman, first there was a sentencing disparity of, you know, if he had won on the ACCA issue, his guideline range would have been much lower and his statutory range would have been lower. That created a significant incentive for him to make the government carry their burden. That's always going to be the case. Versus just admitting, I'm agreeing to spend the next 15 years. Right. But that's always going to be the case in a situation like this. I guess you're saying that it was so significant a disparity that he would have been willing to roll the dice. He may have been, Your Honor. And the analysis here is, would he have weighed that right beyond a reasonable doubt? Well, one of the things that the Supreme Court's decision in Greer says we should look at is the reveal preferences of the defendant. You know, the case about the forfeited rehafers. And the court said, you know, look, after a person gets a sentence they're unhappy with, they have a lot of incentive to say, if I'd known this was coming, I never would have done it. So we are allowed to be a little bit skeptical of things that people claim they would have done after the fact. And so one of the things that Rehafe says is that we should, sorry, Greer says, we should look at any evidence of the defendant's intent before he knew how things were going to turn out. Did Mr. Blackman ever seek to withdraw his guilty plea before the district court? Your Honor, he did not seek to withdraw his guilty plea. Why isn't that a pretty, even after the district court said, I'm going to give you, I'm going to, even after the district court said, I'm going to make these findings and I'm going to give you at no point, he said, whoa, whoa, whoa. That is not the deal I agreed with. I want to withdraw my guilty plea. He didn't ever do that. No, he didn't. But I'm not sure that the, the, at his plea colloquy, the court said, I'm going to apply. Do you really want to vacate this plea? Your Honor. I mean, do you want, is it in the interest of your client to have this plea vacated? Your Honor, Mr. Blackman would then have an opportunity to determine if he wants to admit that. What are you asking from us? Your Honor, I'm asking you to find that the error was not harmless. To do what? To find that the error was not harmless. Well, where do we go from there? Your Honor, based on this record, we don't know that the government has competent trial evidence to prove all the ACCA predicates. Well, here's, can I ask you another harmlessness question? The client, your client, as I recall, did not object to any of the factual statements in the PSR, right? He did not. And the district court without objection from the parties adopted the factual statements in the PSR, right? It did. And once that's true for, okay, so that means that for purposes of this record, your client did not admit anything about what the PSR said about the temporal relationship between these prior offenses, right? Okay. Of all the cases you've looked at, what is the longest gap between two separate criminal offenses have you ever seen a court say was not the same, was not different occasions? The longest. In the cases that I've looked at recently, maybe months. Okay. And how far are these apart? These are years apart. Have you ever seen a court ever say things that happened years apart weren't multiple occasions? I have never seen a court do that. Why should we rule in your favor if we don't know what you want? And it would seem to me you've got the benefit of a three point reduction in the offense level by virtue of acceptance of responsibility. And you go back before the district court and go to trial and given the significant mountain of evidence against you, you're probably in all likelihood going to be  And then when you go back and go back to sentencing, you're not going to have the benefit of the acceptance of responsibility reduction in the offense level. And normally when someone comes before us on a guilty plea, they say we want the guilty plea vacated. But you haven't said that. Do you want this guilty plea vacated? Just looking at the evidence against this gentleman, this is not the kind of case that someone would want to take before a jury. You know, it's a sure loser. But what do you want us to do? Because why should we be wrestling with this and ruling in your favor if you're not sure you even want the guilty plea vacated? Your Honor, I believe that Mr. Blackmun is entitled to have the proper constitutional, his rights advised to him. And to make a decision based on that understanding, to make a decision based on whatever evidence the government made. But if the standard is one of a reasonable probability that he would not have pled guilty given what he knew or knows about the Supreme Court's decision in Wooten and Erlinger, how can we find a reasonable probability that he would not have been, would not have pled guilty if the threshold question, you can't even tell us here that you're contending he would not have pled guilty. You're not even making that argument. Your Honor, I don't think that the burden, the question is whether he would have not pled guilty or whether he would have pled guilty. The question is, can the government prove that he would not have? And that's not for Mr. Blackmun to prove, that's for the government to prove. And on this record, considering that he may have, first of all, there's no competent trial evidence to say that they could have presented to a jury on these predicates. And then second, the fact that if he won, he would have potentially saved 12 years of freedom that they can't say beyond a reasonable doubt. Well, can I just ask you, so let me posit first that the government 100% forfeited this argument, but I don't actually understand why this is a preserved claim at all. Because if you posit, as I think is right, the error is in the advice that the district court gave him at the plea colloquy. The defense counsel didn't object during the plea colloquy. I mean, I think the government had a serious argument that this Erlinger error is forfeited because there was no objection at the plea colloquy to say, excuse me, your honor, you have just told my client something that's legally wrong, I object. And there was no such objection at the plea colloquy, was there? No, there wasn't. But again, I think they, but I mean, you said like in terms of whose burden this is, right? I mean, because I assume that the government's argument on the other side is going to be like, yeah, the reason the record has no evidence of what our evidence would have been at trial is because he pleaded guilty. And one of the things that we get when defendants plead guilty is that we don't have to fully prep our trial. That's like one of the benefits the government is buying when it does a guilty plea. So I could imagine the government saying, it's a little bit unfair to say the record doesn't show what we would have shown at trial because the defendant pleaded guilty. That's correct. It does not show that, your honor. Can I follow up on Judge Heiden's question about what the defense preserved or not, or the government, I'm sorry, preserved or not? And you can correct me if I'm wrong, but I understood that the government took the position that enhancements should not apply in this case, notwithstanding the state of the law. Is that right? That is correct. So it's kind of a bizarre situation. The government did take that position and knowingly taking that position, they did not offer anything that would have, for the record, that would have established these predicates. Right. And so from the defense counsel's perspective, they were quite content, I think, with that position, right? They didn't have to say anything on top of that. No, the defense counsel did not take anything other than to preserve the issue. But, okay. So the other thing is you've made an affirmative statement that there's no competent evidence to make out these ACA enhancement offenses. But how do you know that? What's the, are you just... Well, there's nothing in this record. Right, but we don't know what the government could present or put to the test, right? We do not. And that's exactly why we say that they can't meet their burden beyond a reasonable doubt that Mr. Blackmun would have still pleaded guilty or admitted the occasions issue. Well, I guess... Go ahead, I'm sorry. I was going to say, you know, the presumption of finality that attaches to guilty pleas, and it's a very, very strong presumption. And it's your burden, too, I think, because the Supreme Court's established a very high bar that there has to be a reasonable probability. The standard isn't written in terms of a reasonable possibility. The standard is even higher that there has to be a reasonable probability you would have not have pled guilty if you had known of the Supreme Court's decision. And given the years separated the predicate crimes in this case, it seems to me that the chances of prevailing on an Erlinger claim or a Wooden claim are between zero and none. And so, how can that meet the reasonable probability standard that you would not have pled guilty when there's language in the Supreme Court's opinion saying that I mean, in that case, the crimes were committed on the same evening. But here you have years separating the predicate offenses. And then you have the additional factor that all of these brutal acts were committed against three different victims. There were three women who were assaulted and brutally treated. And so, why should there be any vacation of a guilty plea in light of the distance that separated the predicate crimes? In light of the Supreme Court's language, in light of the fact that it might have been disadvantageous, significantly so, to take this case before jury, I don't understand. There's so much that makes vacating the guilty plea problematic, not just for one reason, but for three or four. Your Honor, I see that I'm out of time. Can I respond? You may answer. Thank you. Your Honor, I believe that in this instance, Mr. Blackman, had he been given the opportunity to have this case, to have the occasions issued, presented to him where he understood that he had the right to a jury trial and have the opportunity to evaluate the government's evidence based on that constitutional right. There is a strong, there may not have been any evidence, one of the- But everybody, you know, everybody sits in a jail cell and that they get a case of buyer's remorse and say, gee, if I'd taken my case before jury, they would have acquitted me. And so, you have these people who face long terms in prison having a case of buyer's remorse and saying, gee, I wish I'd rolled the dice in front of a jury and everything. But if we recognize that as a basis for unwinding a guilty plea to which a finality, presumption of finality attaches, we'd be litigating and re-litigating and re-litigating guilty pleas and the burden imposed upon the system, and in this case with no apparent benefit to the defendant, the consequences of that would be pretty serious. That would be pretty serious. However, I do believe this case would be different than a buyer's remorse, because in this case, Mr. Blackmon was not advised of his right to a jury trial on this issue. In those cases, I believe the court is... I'm sorry that you're speaking of Judge Wilkinson. Those are cases where someone was fully advised of all of their rights and chose to forego a jury trial on that issue and pled guilty. So, if we were before this court speaking about Mr. Blackmon's choice to plead guilty to the possession of the firearm by a felon only, I would say that this would be a buyer's remorse. When the whole point of the Supreme Court's decision presupposes that someone was not advised of their rights on this particular thing, but the Supreme Court says, you know, the question is whether it's harmless error. Correct. And then we would submit in this situation, it's not. All right. Thank you, Ms. McGregor. Thank you. Hear from the government. Good morning. May it please the court, Julie Niemeyer for the United States. The standard that my friend is advocating for is essentially the standard of structural error, but that's not the standard that this court must apply. We already know because of the Brown decision that the question here is whether the Erlinger error was harmless. And to answer that question, we have to think about this hypothetical. Before we get too deep into this, can I just ask you something that's been troubling me about this case? Why did it take more than a year after the defendant's arrest to indict him? When I was reading the timeline of this case, there's like more than literally a year between his arrest and indictment date. And I didn't understand why that was the case. I'm sorry, your honor, I can't answer that. I just don't know. Okay. So in this case, we have to look at this hypothetical question. What would have happened in the district court if Mr. Blackmon had been properly advised that he had the right to a jury finding beyond a reasonable doubt on this issue of whether his past offenses were on different occasions? So we basically take the plea colloquy and where the district court says, if you go to if you that, that all determined if the Ockahansman applies the sentencing, if the court had said instead, you would have a right to a jury's decision about whether that that's the hypo where we changed the plea colloquy to saying that. Exactly, your honor. And so facing that question, what would Mr. Blackmon have done knowing that his three prior violent felonies were five years and seven years apart? Would he have rolled the dice and let a jury decide that question knowing that when he lost, he would then face the higher guidelines range. And he would no longer have acceptance of responsibility and a variety of other negative sentencing consequences would follow. Exactly, your honor. Or would he have made the rational choice to waive that jury right and to preserve the benefits of his guilty plea and thus have a much lower guidelines range? The evidence here in this record shows beyond a reasonable doubt that he would have made the latter choice. And because of that, that was the only way to reduce his sentence. And so we know that this error did not affect his plea. It did not affect his substantial rights, and therefore it should be disregarded. Can I ask you about, I think Judge Heitens mentioned this to your colleague, that wasn't the government's position at trial, right? And so we've got a different view now of the ACA enhancement and whether or not it should apply. So is there a forfeiture problem here for the government? Well, your honor, of course, it is a very unusual situation where the government articulated a new litigating position after the case. Unfortunately, that's not so unusual anymore, but go ahead. I'm sorry. Right, your honor. The government formulated this new position because the Wooden case essentially changed the standard. Instead of simply looking at the fact of a prior conviction, the Wooden case instructed us that we had to look at this panoply of factors. We had to conduct a holistic review of the timing and the nature and the quality. And then you have a concurrence from the justice that ends up writing Erlinger saying, wow, if we're doing all that, that sure sounds like an apprendi question, right? Exactly, your honor. And so what Wooden did is essentially lay the groundwork for the Erlinger court to realize that this took that fact-finding process beyond what Alamandor's torres permitted the sentencing judge to do. And so recognizing that, government articulated that position at Mr. Blackman's sentencing. Well, the Wooden case really sets out a blueprint that's sort of on all fours with this particular case because it says in a situation where you have, where all of the crimes are committed on, you know, on a single evening and the homes or whatever are close together and everything, then that's likely not to be harmless. But where you have a situation, and this is right out of the Supreme Court decision, you have a situation where the crimes are separated by years and by locale and with different victims. They say that's, there's no way that that could mean anything but harmless. And that's this case and the Supreme Court has just already answered it in terms that could not be clearer. Yes, your honor. Absolutely. So is the government's position essentially the only way that a jury could possibly have found these were separate, the only way the jury could have possibly found him guilty of the underlying substantive offense, but then concluded the ACA enhancement didn't apply? That's the hypothetical that a jury does, right? They find him guilty of the substantive offense, but they conclude the ACA enhancement doesn't apply. Is the government's position that essentially the only way the jury could do that would be during nullification because under the correct legal standard, there would be no bait. Now, but you agree, juries are, I guess I won't use the allowed word, juries have the power to nullify. But I guess then would you further then say that like Brown and Greer say the possibility that a jury might nullify is not enough to render the error, not harmless. Exactly, your honor. I think it's helpful to go back to the whole rationale behind the doctrine of harmless error in the constitutional context. In Brown, this court said discrete defects in the criminal process, even if they represent a constitutional error, are not structural because they do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. And this court was quoting the Greer standard when it said that in Brown. So the whole philosophy of this doctrine is that there are these errors that don't make the process fundamentally unfair to the defendant. And an error is not, an error is not not harmless just because it's possible that if this error didn't occur, the jury might have done something different. Like possible in the sense of like you could imagine it happening. Right, that's not enough to make an error not harmless. Exactly. And fortunately, we're not without a roadmap in conducting this analysis. This court has looked at this precise question seven times since Brown and Boggs were released. And in each of those seven cases, which were unpublished decisions, the court found that the error was harmless beyond a reasonable doubt. And in doing so, the court identified four primary indicators that help that analysis. So I'll just list them briefly and then I'll go back to each. These are in Brown or these in these unpublished opinions? I'm sorry, sir. These are in, these four things are in Brown or they're in these seven unpublished opinions? The factors are discussed in Brown, your honor, but there are, they're identified more clearly in the unpublished decisions as an analysis. So first, was the defendant properly advised that the armed career penalty could apply? When so advised, did he ever seek to withdraw his plea? Did the defendant dispute the accuracy of any of the information in the PSR that was underlying the enhancement? And then finally, what essentially were the odds of success for the defendant? And in seven of these cases of the court, the court has recognized what it calls an inverse relationship, essentially, on that fourth factor between the strength of the evidence supporting the enhancement and the likelihood that the defendant would give up the benefit of his guilty plea in order to try to fight that. I'll repeat these again. Whether he's advised of the ACA, whether he seeks to withdraw his plea, the third is what? I'm sorry. Did he object or dispute the accuracy of the PSR? The PSR. Wait, then why isn't that obviously missing at least one factor, which is like, what's the ups? So number four, in some ways, is like, what's the downside from his perspective? Why wouldn't you obviously also ask what's the upside? Because, right? The bigger, the bigger, the potential benefit, the more, you know, this is just like micro econ 101, right? I would weigh like, what's, what's the, what's the best thing that could happen? And what are the odds of that? And what's the worst thing that could happen with the odds of that? So I, it seems like to me, a rational defendant would think, well, like, I mean, if I would be radically better off, if I won this argument, right, this is why like homicide defendants go to trial sometimes, because the disparity between what you get, if you're found guilty versus if you got is so big, even if the odds are low, it's worth sometimes taking a risk if you're going to get a huge benefit, right? Right. I understand. I think that inquiry is baked into the fourth factor. It's baked into this question of the odds, because the inverse relationship between the evidence and then what the defendant decides, that assumes that the defendant is doing a calculus with the assistance of his counsel, of course. And the calculus is, what are my chances of winning on this evidence? What do I have to gain? If I can test the enhancement, what do I have to lose? That's all part of that same analysis. So in this case, going back to the first factor, of course, the defendant, Mr. Blackman was properly advised that he could face the ACCA penalty. It was in his indictment. His indictment not only charged a violation of 924E, but it also specified that he had committed these three violent felonies on different occasions. And it's cited the ACCA. I'm sorry. The indictment also cites the ACCA. Correct, sir. Yes, yes. But the whole inquiry requires us to look backward at the time that the plea is taken. If the full information was there, it's a backward glance. It is not a glance of what the prisoner is thinking in his prison cell. That is not the relevant, that is decidedly not the relevant question. The relevant question is the calculus that would have been made, given what we know about the evidence and given what we know about the strength of the case and all of the rest. And the question is, on that date, had he been informed of the Erlinger and Woodenwood, what would he have done? But it's not what he's thinking now. What he's thinking now is not relevant. What he was thinking or would have been thinking then, he knows, that's the only question. Exactly, Your Honor. And when we look at what was he thinking then, we know that he was thinking, yes, there was this possibility of the ACCA penalty. And he was told that. The only thing he wasn't told was that the burden of proof would be higher. No, and judge versus jury. And judge versus jury, yes. Erlinger makes very clear that the judge versus jury distinction is critically important. As is the burden, it seems to me. He just pointed out something that seems to be critically important. It's an amount of difference between proof by a preponderance and proof beyond a reasonable doubt. And a particular defendant might, notwithstanding the long odds given the evidence, might say, well, the jury might be the conscience of the community and might decide that in my particular case, it's just not a proper result that I should face this enhancement. What's wrong with that analysis? Well, that's a very true analysis, sir. But I think that kind of takes us to the third factor of the court's analysis on harmless error, which is, was there any dispute about the facts that underlie this enhancement? And here, there just simply was not. And that is what would be going through the defendant's mind and the defendant's counsel's mind as they are facing both the Rule 11 and the sentencing. They'd be thinking, having been properly advised, how strong is this evidence? That would be part of- Well, as you, I think you began your argument with it. If these facts, with the separation of these offenses, suffice to vacate the plea, then there is no such thing as harmless error, because you're not going to get another case where you have the different victims, the different locations, the increased time span between the things, between the crimes. And if this suffices to vacate the plea in this instance, then there is no longer a harmless error doctrine. And we have essentially nullified the Supreme Court's views in Wooden and adopted what is, in essence, an approach of structural error to the occasions matter. And that is not where the Supreme Court is. And that is not what this record shows. Exactly, Your Honor. 100% agree with that. And that goes back to the standard that was referenced in Greer and in Brown, that these errors do not represent a fundamental unfairness to the defendant. Well, hold on, I admit I'm the person who introduced both Greer, but Greer, it is pretty important, is it not, that Greer is a plain error case, not a harmless error case? Absolutely, Your Honor. Because, for example, seriously undermine the fairness, integrity, and public reputation of judicial proceedings is a critically important question in a plain error case, and it is literally not a question in a harmless error case, right? Of course. But we're talking here about the effect on substantial rights. Okay. And, of course, the government accepts that burden, but the government has met that burden here because it has shown that based on the facts here, the evidence here, the record shows this would not have had an effect on his substantial rights. So I realize this is kind of fighting against Brown, which I realize is ironic, given that I was on the panel in Brown. But it seems like that's a kind of weird way to do harmless error, because it essentially says, dear defendant, prove to me that you would have done something different. That's not normally how harmless error works, generally, right? Yeah, I would agree with that, sir. But kind of similar to the Greer context, again, we have to look at the whole record, and the government is looking at the whole record. The court is looking at the whole record. And, of course, it is up to the government to articulate how that record shows an absence of evidence that could. So without asking you to concede on behalf of the government any specific cases, your argument is that if we accept the defendant's argument, there's no such thing as a harmless Erlinger error in a guilty plea context. I guess you've cited Brown plus seven cases. I guess the hypothesis on the other side might be the government is articulating a standard where there's literally no such thing as a harmful error in the guilty plea context of Erlinger. So again, without asking you to give away the facts of any specific case, can you walk me through what, in the government's view, the characteristics of the type of a case where the government would lose this harmless error question look like? Absolutely, Your Honor. I think we can go right back to the Brown. Because even in Brown, there was this circumstance where two of the defendant's predicates were sentenced on the same day. And so he maybe has a pretty good argument. These are actually different occasions. Of course, there could be a factual argument that the defendant was confused, that the defendant misunderstood that the proceeding was sentencing him on two cases instead of just one. There could be a factual issue there. The timing of the arrests, the convictions, of course, the closeness of the actual offenses. I think this again, because your take here is that for a jury to find these weren't the same occasions, the jury would essentially have to nullify. So a case where, no, the jury wouldn't have to nullify. The jury would have to adopt a fairly charitable to the defendant view of the facts. But it wouldn't be necessarily nullification for them to find that they're different occasions. Right. It could be a charitable view. Of course, the defendant. And that's the kind of case where a defendant might say, well, I'd like to go to a jury and make the government prove beyond a reasonable doubt. Sure. And perhaps the defendant could put on evidence saying that this is the paperwork that I received when I was sentenced in that consolidated proceeding. And I didn't understand that this was two separate convictions. No, but I don't even, I don't even, I mean, that's the easiest one. But then there's the one where, like, the defendant has a, shall we say, aggressive, but plausible argument under Wooden. But even accepting the facts, we all know the facts. Like they were, one happened at 11. So I know Wooden says, for example, courts have almost always found things that happen a day apart to be different occasions. But imagine a world in which one of them happens at like 11.45 PM. And the next one is a robbery that happens the next morning at nine. Exactly. And I can say, I think safely, I think it's appropriate to say that the government has foregone this enhancement in cases exactly like that. Cases where the timing is too close, where the locations are too close. Can I ask you a question about what evidence the government would present in a ACCA enhancement mini trial where the evidentiary burden is proved beyond reasonable doubt? Because Ms. McGregor says that there was no competent evidence in this record to make that case. First of all, do you agree with that? And second, with the evidence, and I guess part of that argument is, it's a sentencing proceeding. At the time, it was proved by ponderance, the evidence, the rules of evidence were relaxed. And so obviously, before a jury, you'd have an entirely different presentation or not. What's your view of that? Oh, of course, it would be different, Your Honor, because, of course, the government would have to put in, let's say, a certified copy of the judgment of each conviction. The government would probably have to call a witness. Which would get into, sorry, just to walk the sheets, like now we're in a jury trial, so the rules of evidence apply. That's fine, because those are going to come in as public records. Even if it wasn't certified or came in under that exception, a clerk could testify that this was a reliable record from that particular court. And we're not going to be able to rely on the probation officer's description of what the facts of that offense were. The government's going to have to call people or somehow present. Hearsay from the probation officer is not going to come in about what the circumstances of the previous offense were. Correct, Your Honor. Correct. So does that at all impact the calculus? I mean, it's more difficult. I mean, how long ago were these offenses? 2003, 2008, and 2015. You might have some problem finding witnesses to talk about the particular facts of the offenses, particularly the one in 2003. May not be a fact witness, Your Honor, but there certainly could be a witness to the reliability of the certified conviction. And here, what the PSR shows is not the evidence itself, of course, because this wasn't guilty, but what it shows is earmarks of derivation from Shepard-approved sources. And the court is able to rely on that because it bears those earmarks of reliability. Juries can't rely on those, right? Oh, absolutely. One question, just as you close out. In a post-Erlinger world, are we doing this as one trial? In cases that go to trial, probably there aren't that many, but in cases that go to trial, does the government currently have a position? Do you have a single unified trial where we do the facts of the underlying crime, and we also present evidence of the AHCA enhancement in a single proceeding before a jury? Or do we bifurcate? Or does it depend? I see my time has expired. May I respond? I haven't seen one of these proceedings, but I believe the better way to go about it would be a bifurcated proceeding where the jury is asked to look at the substantive nature of the offense. And then, if a guilty verdict is reached on those matters, then to proceed to whether the sentence enhancement element has been met beyond a reasonable doubt. Thank you very much, Ms. Niemeyer. Thank you. Mr. McGregor? Thank you. I'll just point to two things. First, when the difference is potentially 12 years of liberty, we can't say beyond a reasonable doubt that a rational defendant would have surrendered his right to a jury trial and to require the government to prove the AHCA enhancements beyond a reasonable doubt. And then, speaking to the evidence that may be presented, especially with the 2003 conviction, that the certified judgments may have the dates of offense or things of that nature. But we know that sometimes those records may not always be accurate exactly to the date because there's no reason for the defendant to challenge the date sometimes. And we know that. Why wasn't that done at the earlier hearing, at the original guilty plea hearing? Your Honor, I would submit that at the guilty plea hearing, there was no issue about the dates of conviction. That would have been a sentencing issue. Is Judge Wilkinson, are you asking me why didn't he challenge that at the sentencing hearing? Yeah, I'm asking you. It seemed to me that the guilty plea hearing, the defendant here had counsel, that the PSR was attested to as accurate, that the sentence and the ACC enhancement were fully explained. It seemed to me that there was the things that we like to see in guilty plea hearings were there. And this question of different occasions, the Supreme Court may not have ruled on it, but it was certainly bubbling about the lower federal courts. And if there was an objection of some sort, it would seem to me the counsel would have raised it. But there wasn't. It was PSR was submitted as I understand it, not objected to. And as a result, the district court adopted it and it became part of the record. And I don't think the Supreme Court has indicated that the harmlessness inquiry would turn on a factor such as doubt that the critical questions were the separation in time and the separation in location and the difference of the victims and all of the arrows seemed to me to make it a problematic case for you. But I mean, I do think that, you know, it's all it would have been always open for you to object to the PSR had you felt the client would have been prejudiced in any way. But there was no objection. Well, Your Honor, I believe the decision to object to the PSR and the decision to have the government prove that armed criminal enhancements are two separate inquiries because they're under two separate legal standards. Can I take you back? The first thing you said in your rebuttal was 12 years. And yeah, 12 years is a really big difference. Do you know what the disparity in Brown was? Your Honor, I do not recall. Like the defendant in Brown also had a had I not gotten this enhancement, my guidelines range would have been blank. So it's just yes. Thank you. All right. Thank you, Mr. McGregor. I want to thank both counsel for their arguments. We'll come down. We'll come down. Can we take a brief recess? We'll come down and reach you and take a brief recess before moving on to our third case. It's on report. We'll take a brief recess.
judges: Albert Diaz, J. Harvie Wilkinson III, Toby J. Heytens